**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

VICTOR E. SALAZAR
*Plaintiff,*

v.

OFFICE OF CONGRESSMAN ENI F. H. FALEOMAVAEGA
2422 Rayburn House Office Building
Washington, DC 20515

*Defendant.*

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## I. INTRODUCTION

**COMES NOW** Plaintiff VICTOR E. SALAZAR, by and through his undersigned counsel, who hereby brings this action against his former employer, the OFFICE OF CONGRESSMAN ENI F. H. FALEOMAVAEGA (hereinafter "EMPLOYER" or "Defendant"), for its violations of Sections 201(a)(1), 202(a)(1) and 207(a) of the Congressional Accountability Act.

## II. JURISDICTION AND VENUE

1. The subject matter jurisdiction of this Court is invoked pursuant to the provisions of 2 U.S.C. §1408(a). VICTOR E. SALAZAR: (1) is a covered employee by virtue of his position with the EMPLOYER (a covered employing agency); (2) completed counseling and mediation pursuant 2 USC §§ 1402-03; and (3) filed this civil action within the time period prescribed in 2 U.S.C. §1404 following receipt of notice of the end of mediation.

2. Personal jurisdiction over Defendant is invoked pursuant to 2 U.S.C. §1408(b).

3. Venue is proper because Defendant is predominantly located within this District and the actions complained of occurred within this District. Furthermore, there is but one Court within the District.

## III. PARTIES

4. Plaintiff VICTOR E. SALAZAR (hereinafter referred to as "SALAZAR" or Plaintiff) prior to and during most the incidents which give rise to this complaint was a resident of Alexandria, Virginia, except the period from November 15, 2013, until Plaintiff's termination when he was a resident of Springfield, VA.

5. Defendant OFFICE OF CONGRESSMAN ENI F. H. FALEOMAVAEGA is a part of the United States Congress which is primarily located in the United States Capitol Complex.

6. Prior to and during the incidents which give rise to this complaint Plaintiff was an employee of the EMPLOYER.

7. Plaintiff is a male whose racial make-up is predominantly Samoan and Hispanic/Latino.

8. Plaintiff is of the Catholic faith.

9. Lisa Williams, a Caucasian female who appears to be of non-Hispanic/non-Latino Caucasian descent, served as Chief of Staff of the EMPLOYER and served as Plaintiff's supervisor at all times relevant herein.

10. Lisa Williams is a member of The Church of Jesus Christ of Latter-day Saints (hereinafter "Mormon").

11. Taafili Sagapolutele, a Samoan male, was hired as Legislative Counsel approximately two years after Plaintiff was hired.

12. Taafili Sagapolutele is of the Mormon faith.

13. Eni F. H. Faleomavaega, a Samoan male, has served as the sole member of the House of

Representatives from American Samoa since 1989 and at all times relevant herein.

14. Eni F. H. Faleomavaega is of the Mormon faith.

15. Defendant is an employer subject to both Title VII of the Civil Rights Act of 1964 as applied by the Congressional Accountability Act (hereinafter “CAA” or “the Act”) as well as the prohibition of intimidation or reprisal contained within the CAA itself.

## IV. FACTUAL ALLEGATIONS

16. On May 25, 2011, Defendant hired Plaintiff as a Legislative Counsel.

17. Plaintiff worked more than 1,250 hours during the twelve months preceding his termination by Defendant.

18. At all times relevant herein Defendant was aware of Plaintiff’s Catholic faith.

19. Plaintiff is informed and believes and thereon alleges that at all times relevant herein he was the only employee of Defendant of Catholic faith.

20. On or about February 1, 2013, Defendant hired Taafili Sagapolutele as a Legislative Counsel.

21. At the time of hire Mr. Sagapolutele was paid substantially more than Plaintiff despite Plaintiff’s two years of experience with Defendant.

22. The pay disparity between Plaintiff and Mr. Sagapolutele continued until Plaintiff was terminated by Defendant.

23. Defendant provided assistance and guidance to Mr. Sagapolutele in fulfilling his duties that Defendant denied Plaintiff.

24. In or about May 2013 Lisa Williams was unfairly critical of Plaintiff’s work, particularly as it involved the Defendant’s work on the “Red Skins” issue. Concurrently, Ms. Williams very supportive of Mr. Sagapolutele’s work on the same matter despite his having issued an

embarrassing communication on the issue, the blame for which Ms. Williams attempted to place upon Plaintiff.

25. On August 31, 2013, Plaintiff's mother died suddenly and unexpectedly at the wedding of Plaintiff's sister at which Plaintiff was present.

26. The cause of Plaintiff's mother's death was sudden cardiac arrest.

27. Plaintiff obtained counseling to assist him with his grief.

28. On October 11, 2013, Plaintiff's maternal grandmother died.

29. Lisa Williams engaged in hostile and demeaning behavior towards Plaintiff on a number occasions, including but not limited to a discussion on October 30, 2013, in which she publically chastised Plaintiff for not spending his own funds to purchase a MacBook power cord while callously disregarding Plaintiff's explanation that he would have made the purchase but did not have the funds available because he had recently sent all spare money to his family to help with funeral expenses for his maternal grandmother who had died in American Samoa on October 11, 2013.

30. Later on October 30, 2013, during a meeting in which Lisa Williams expressed alleged concerns about him, Plaintiff stated to Williams that he believed they should bring their discussion to the Office of Compliance (United States Congress).

31. Plaintiff returned to his desk immediately following the meeting with Williams. Plaintiff collapsed onto the ground and experienced loss of sensation in his arms and became more distressed that he might be having a heart attack.

32. Plaintiff is ultimately taken to a hospital on Capitol Hill by Defendant's staff.

33. On October 30, 2013, Plaintiff is informed by his doctor that he experienced an anxiety attack and he is instructed to avoid stressful situations.

34. Following Plaintiff's suggestion of involving the Office of Compliance in their discussion, Defendant began applying unusual scrutiny of Plaintiff's arrivals and departures from the workplace including periods when office hours are traditionally lax.

35. Following Plaintiff's suggestion of involving the Office of Compliance in their discussion, Defendant began applying unusual scrutiny of Plaintiff's workplace activities.

36. On or about November 5, 2013, Defendant put Mr. Sagapolutele, at that time having only about ten months of experience with Defendant, "in charge" of Defendant's District of Columbia office while Chief of Staff Williams was traveling due to a health crisis suffered by Eni F. H. Faleomavaega in late October 2013.

37. On November 14, 2013, at about 4:30 PM, Plaintiff is informed by Defendant that he must move out of Eni F. H. Faleomavaega's condominium by the next day, Friday, November 15, 2013.

38. Plaintiff had been residing with Congressman Faleomavaega and another staff member since he was hired by Defendant approximately two and one-half years previously.

39. On November 15, 2013, Lisa Williams chastised Plaintiff for not responding to an email despite having full knowledge of Defendant's prior requirement that Plaintiff move out of the Congressman's condominium with virtually no notice.

40. On November 18, 2013, Plaintiff filed a Request for Counseling with the Office of Compliance.

41. Upon arriving at work at 11:30 AM, following visiting the Office of Compliance, Plaintiff again feels panicked and leaves work. He then visits his doctor who finds that his blood pressure is elevated and continues to elevate while with the doctor.

42. Plaintiff explained his work situation to the doctor. The doctor then placed Plaintiff off

work for one week.

43. Plaintiff sent the doctor's off-work instructions to Defendant via facsimile at about 4:35 PM on November 18, 2013. In the accompanying cover sheet Plaintiff stated that he could not return to work until at least November 25, 2013, due to medical reasons.

44. On November 18, 2013, at about 5:13 PM, Defendant sent an email to Plaintiff stating that Plaintiff was terminated from employment. Plaintiff did not see this email until days later as he was attempting to avoid suffering another panic attack by avoiding workplace emails generally.

45. On November 25, 2013, Plaintiff was given another week off work by a psychiatrist who also instructed Plaintiff to attend a workplace stress group and prescribed medication to control future panic attacks.

46. On the evening of November 25, 2013, while waiting for the workplace stress group to begin Plaintiff checked his workplace emails and found Defendant's email dated November 18, 2013, terminating Plaintiff's employment.

47. On December 6, 2013, Plaintiff filed another Request for Counseling with the Office of Compliance.

## V. STATEMENT OF CLAIMS

### COUNT ONE
### Violation of the Prohibition of Intimidation or Reprisal
### (2 U.S.C. §1317)

48. The foregoing paragraphs are incorporated herein as if set forth in full.

49. Plaintiff was subjected to intentional intimidation, reprisal and retaliation by Defendant following his October 30, 2013, suggestion of involving the Office of Compliance in their discussion.

50. Plaintiff was subjected to intentional intimidation, reprisal and retaliation by Defendant following his November 18, 2013, in person visit to the Office of Compliance.

51. Plaintiff was subjected to intentional intimidation, reprisal and retaliation by Defendant and its agents resulting in Plaintiff being required to move out of his home of over two years with virtually no notice.

52. Plaintiff was subjected to intentional intimidation, reprisal and retaliation by Defendant and its agents resulting in termination of Plaintiff's employment.

53. Defendant did not act in good faith as to any CAA §207 (2 U.S.C. §1317) violations alleged herein Count One.

**COUNT TWO**
**Violation of Civil Rights**
**(2 U.S.C. §1311)**

54. The foregoing paragraphs are incorporated herein as if set forth in full.

55. Defendant intentionally discriminated against Plaintiff based upon race when it employed a non-hispanic attorney as Legislative Counsel at a higher rate of pay than Plaintiff.

56. Defendant intentionally discriminated against Plaintiff on the basis of race when it terminated his employment.

57. Defendant intentionally discriminated against Plaintiff based upon race when it required him to move out of his residence.

58. Defendant intentionally discriminated against Plaintiff based upon race when it required him to move out of his residence essentially without notice.

59. Defendant intentionally discriminated against Plaintiff based upon race when it unfairly criticized his work.

60. Defendant intentionally discriminated against Plaintiff on the basis of race when it failed to

provide him the same assistance and guidance it provided others in the workplace.

61. Defendant did not act in good faith as to any CAA §201 (2 U.S.C. §1311) violations alleged herein Count Two.

**COUNT THREE**
**Violation of Civil Rights**
**(2 U.S.C. §1311)**

62. The foregoing paragraphs are incorporated herein as if set forth in full.

63. Defendant intentionally discriminated against Plaintiff based upon religion when it employed a Mormon attorney as Legislative Counsel at a higher rate of pay than Plaintiff.

64. Defendant intentionally discriminated against Plaintiff on the basis of religion when it terminated his employment.

65. Defendant intentionally discriminated against Plaintiff based upon religion when it required him to move out of his residence.

66. Defendant intentionally discriminated against Plaintiff based upon religion when it required him to move out of his residence essentially without notice.

67. Defendant intentionally discriminated against Plaintiff based upon religion when it unfairly criticized his work.

68. Defendant intentionally discriminated against Plaintiff on the basis of religion when it failed to provide him the same assistance and guidance it provided others in the workplace.

69. Defendant did not act in good faith as to any CAA §201 (2 U.S.C. §1311) violations alleged herein Count Three.

//

//

//

**COUNT FOUR**
**<u>Violation of Civil Rights</u>**
**(2 U.S.C. §1311)**

70. The foregoing paragraphs are incorporated herein as if set forth in full.

71. Defendant intentionally discriminated against Plaintiff based upon national origin when it employed a non-hispanic attorney as Legislative Counsel at a higher rate of pay than Plaintiff.

72. Defendant intentionally discriminated against Plaintiff on the basis of national origin when it terminated his employment.

73. Defendant intentionally discriminated against Plaintiff based upon national origin when it required him to move out of his residence.

74. Defendant intentionally discriminated against Plaintiff based upon national origin when it required him to move out of his residence essentially without notice.

75. Defendant intentionally discriminated against Plaintiff based upon national origin when it unfairly criticized his work.

76. Defendant intentionally discriminated against Plaintiff on the basis of national origin when it failed to provide him the same assistance and guidance it provided others in the workplace.

77. Defendant did not act in good faith as to any CAA §201 (2 U.S.C. §1311) violations alleged herein Count Four.

**COUNT FIVE**
**<u>Violation of Civil Rights</u>**
**(2 U.S.C. §1311)**

78. The foregoing paragraphs are incorporated herein as if set forth in full.

79. Defendant, through its female Chief of Staff Lisa Williams, intentionally discriminated

against Plaintiff based upon sex when it employed an attorney whose self-expression, mannerisms and behavior are less traditionally masculine, or are perceived as less masculine, as Legislative Counsel at a higher rate of pay than Plaintiff.

80. Defendant intentionally discriminated against Plaintiff on the basis of sex when it terminated his employment.

81. Defendant intentionally discriminated against Plaintiff based upon sex when it required him to move out of his residence.

82. Defendant intentionally discriminated against Plaintiff based upon sex when it required him to move out of his residence essentially without notice.

83. Defendant intentionally discriminated against Plaintiff based upon sex when it unfairly criticized his work.

84. Defendant intentionally discriminated against Plaintiff on the basis of sex when it failed to provide him the same assistance and guidance it provided others in the workplace.

85. Defendant did not act in good faith as to any CAA §201 (2 U.S.C. §1311) violations alleged herein Count Five.

**COUNT SIX**
**Violation of Civil Rights**
**(2 U.S.C. §1311)**

86. The foregoing paragraphs are incorporated herein as if set forth in full.

87. Defendant's actions in violation of Plaintiff's civil rights including those set forth in Counts One through Five inclusive were of a continuing nature and constituted a hostile work environment.

//

//

**COUNT SEVEN**
**Violation of the Family and Medical Leave Act**
**(Interference – Exercise of Rights [29 U.S.C. § 2615(a)(1); 2 U.S.C. §1312)**

88. The foregoing paragraphs are incorporated herein as if set forth in full.

89. Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii), (hereafter "FMLA") as applied by the Congressional Accountability Act, 2 U.S.C. § 1312(a)(2)(B).

90. Plaintiff requested FMLA leave for a serious health condition on November 18, 2014.

91. Plaintiff's illness, anxiety, constitutes a serious health condition within the meaning of the FMLA.

92. Plaintiff's serious health condition has resulted in episodes of incapacity at least one of which lasted for more than three days.

93. Plaintiff's serious health condition has required more than two treatments per year.

94. Plaintiff's serious health condition is a condition requiring multiple treatments and is likely to result in a period of incapacity of Plaintiff of more than three consecutive days in the absence of such treatment.

95. Plaintiff was entitled to request and receive leave pursuant to the FMLA and Defendant was not permitted to interfere with Plaintiff's exercise of his rights under the FMLA.

96. Defendant interfered with Plaintiff's rights by terminating his employment because Plaintiff had requested FMLA leave.

97. Defendant did not act in good faith as to any CAA §202 (2 U.S.C. §1312) violations alleged herein Count Seven.

//

//

**COUNT EIGHT**
**Violation of the Family and Medical Leave Act**
**(Interference – Discrimination/Retaliation [29 U.S.C. § 2615(a)(2); 2 U.S.C. §1312)**

98. The foregoing paragraphs are incorporated herein as if set forth in full.

99. Defendant retaliated against Plaintiff for requesting FMLA leave on November 18, 2013, by terminating his employment.

100. Defendant did not act in good faith as to any CAA §202 (2 U.S.C. §1312) violations alleged herein Count Eight.

## VI. PRAYER FOR RELIEF

101. WHEREFORE, Plaintiff VICTOR E. SALAZAR requests:

102. An award of compensatory damages for extreme embarrassment, humiliation and mental anguish in the amount of $300,000;

103. An award of damages equal to the cost of medical care incurred as a result of Defendant's violations of the CAA;

104. An award of damages equal to the cost of future medical care made necessary by Defendant's violations of the CAA;

105. Such legal or equitable remedy as the Court deems appropriate to redress violations of the CAA prohibition of intimidation and reprisal;

106. Damages equal to the amount of wages and benefits Plaintiff would have earned had he not been terminated in violation of the CAA;

107. Damages equal to the amount of wages and benefits Plaintiff would have earned while employed had he been paid comparably to Taafili Sagapolutele;

108. An order requiring Defendant to reinstate Plaintiff as Legislative Counsel with a salary both commensurate with his experience with Defendant and comparable to that of Taafili

Sagapolutele;

109. Liquidated damages equal and in addition to the amount of damages and interest awarded for the violations stated in Counts Seven and Eight, as provided for in 29 U.S.C. § 2617(a)(1)(A)(iii);

110. Interest on the amount of damages at the prevailing rate and according to proof;

111. An order requiring Defendant to adjust Plaintiff's employment records to reflect the benefit and tenure status which Plaintiff would now enjoy concomitant with any ordered reinstatement and/or pay increase;

112. An order prohibiting Defendant from (a) placing or maintaining Lisa Williams in Plaintiff's chain of command; (b) allowing Lisa Williams to participate in or contribute to Plaintiff's future performance reviews, bonus considerations, raise evaluations, evaluations for promotion, or any other aspect of Plaintiff's employment with Defendant.

113. Reasonable attorney's fees and other costs according to proof.

Respectfully Submitted,

Donald A. MacKay DC BAR #986316
Attorney at Law
790 East Colorado Blvd, Ninth Floor
Pasadena, CA 91101-2193
Phone: 202-642-4646
Fax: 866-365-8821
Email: don@damackay.com